GREENBERG TRAURIG, LLP
Allen G. Kadish
200 Park Avenue
New York, New York 10166
Telephone:  (212) 801-9200
Facsimile:  (212) 801-6400
kadisha@gtlaw.com

Mark D. Bloom (*pro hac vice* admission pending)
Paul J. Keenan (*pro hac vice* admission pending)
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile:  (305) 579-0717
bloomm@gtlaw.com
keenanp@gtlaw.com

Attorneys for Andrew Bickerton as Liquidator of
   Wellgate International Limited

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------x
In re                                     :         Chapter 11
                                          :
BOZEL S.A.,                               :         Case No. 10-11802 (AJG)
                                          :
                    Debtor.               :
----------------------------------------------------x

## MOTION (A) TO ENFORCE CORPORATE GOVERNANCE RIGHTS, (B) TO DESIGNATE RESPONSIBLE PERSON, OR, IN THE ALTERNATIVE (C) FOR RELIEF FROM THE AUTOMATIC STAY, AND MEMORANDUM OF LAW IN SUPPORT

# TABLE OF CONTENTS

Basis For Emergency Relief ....................................................................................................1

Preliminary Statement..........................................................................................................2

Jurisdiction ...........................................................................................................................3

General Factual Background.................................................................................................4

    A.    The Parties Before the Court......................................................................4

    B.    Wellgate Proceedings in BVI.....................................................................5

    C.    Liquidator's Pre-Petition Actions ..............................................................5

    D.    Liquidator's Post-Petition Actions.............................................................7

Argument ..............................................................................................................................9

    A.    This Court Must Recognize the Rights of the Debtor's Sole Shareholder to
           Remove a Director as a Matter of Corporate Governance......................9

        (i)    Shareholder Rights of Corporate Governance Subsist During
                  Reorganization ......................................................................9

        (ii)    Bozel S.A. Shareholder's Rights are Defined by Luxembourg Law.........12

        (iii)    Luxembourg Law Would Recognize BVI Liquidator's Authority,
                  and Would Grant BVI Liquidator Broad Powers as Sole
                  Shareholder of Bozel S.A. ...................................................12

    B.    This Court Should Appoint Bickerton as the Responsible Person to Take
           Charge of the Debtor's Affairs .................................................................14

    C.    Federal Rule of Bankruptcy Procedure 9001(5) Expressly Authorizes the
           Appointment of a Controlling Shareholder.............................................16

    D.    This Court Should Grant Relief from Stay to Allow Debtor's Sole
           Shareholder to Exercise Control of Stock in and Corporate Governance of
           Subsidiary Entities .................................................................................18

No Prior Request..................................................................................................................20

Conclusion ..........................................................................................................................20

Index to Exhibits.................................................................................................................22

*MIA\181,185,090v6 126432.010100*

Andrew D. Bickerton ("<u>Bickerton</u>" or the "<u>Liquidator</u>"), in his capacity as Liquidator of Wellgate International Ltd. ("<u>Wellgate</u>"), moves pursuant to 11 U.S.C. §§ 105(a), 362(d)(1), 1107(a), and Fed. R. Bankr. P. 9001(5) for entry of an Order (i) enforcing and giving effect to the corporate governance rights of the Liquidator on behalf of the Debtor's 100% shareholder, (ii) designating the Liquidator as sole and exclusive "Responsible Person" for the Debtor, and (iii) granting relief from the automatic stay to exercise control of the stock in and corporate governance of the Debtor's subsidiaries. In support of the requested relief, the Liquidator respectfully sets forth:

## BASIS FOR EMERGENCY RELIEF

1.     Bickerton comes before this Court in his capacity as Liquidator of Wellgate on an emergency basis in order to obtain control over (A) the Debtor, a Luxembourg-based holding company owned 100% by Wellgate, and (B) the stock and assets of the Debtor's operating subsidiaries in the U.S., France and Brazil. The emergency nature of this Motion is three-fold.

2.     First, BVI law imposes upon Bickerton a deadline of May 10, 2010 (i.e. 60 days from the commencement of the BVI insolvency proceeding) by which to prepare a "preliminary report" covering, among other things, the assets and liabilities of Wellgate, the company for which Bickerton acts as Liquidator. *See* BVI Insolvency Act, 2003 § 226(1)(b).[1] The ongoing refusal of the Debtor's ousted director, Michel Marengère, to recognize the authority of and take instruction from the Liquidator will likely result in Bickerton's inability to make a full accounting of Wellgate's assets to the BVI Court by the BVI Court-imposed deadline. *See*

---

[1]     *See* http://www.bvifsc.vg/AreaofSupervision/InsolvencyServices/Legislation/tabid/105/Default.aspx (accessed April 25, 2010), and click "Insolvency Act No. 5 of 2003."

Declaration of Andrew D. Bickerton (the "Bickerton Declaration") ¶ 21. A true and accurate copy of the Bickerton Declaration is attached hereto as Exhibit A.

3. Second, in the exercise of his duties as Liquidator under BVI law, Bickerton has received three outstanding, bona fide offers to purchase significant assets of the Debtor's wholly-owed subsidiaries. In the event a sale to one or more of these potential purchasers is not able to be consummated immediately after May 10, 2010, the prospects of such a sale will be significantly diminished, to the disadvantage of the creditors of Wellgate and the Debtor. *See* Bickerton Declaration, ¶ 22.

4. Third, the Liquidator has credible information suggesting that a significant amount of funds have vanished from the accounts of one of the Debtor's subsidiaries and have been diverted by Marengère. The Liquidator has been frustrated in his efforts to confirm this information and safeguard the assets of the estate and its subsidiaries by Marengère's failure to grant him access to the Debtor's books and records. Any delay that maintains Marengère in his position of control over the Debtor and its books and records will serve only to facilitate the further dissipation of funds from the estate and its subsidiary entities, all to the detriment of the Debtor's creditors. *See* Bickerton Declaration, ¶ 23.

## PRELIMINARY STATEMENT

5. This case arises from the willful and defiant acts of an ousted director of a Luxembourg company to abuse the protections afforded by Chapter 11 of the U.S. Bankruptcy Code in an effort to frustrate the legitimate attempts of the Debtor's sole shareholder -- Wellgate -- to assert control over the Debtor which, through its operating subsidiaries, conducts business operations on three continents.

MIA\181,185,090v6 126432.010100

6.     Time and again, the rogue director has rebuffed and refused to follow instructions from Bickerton, the duly appointed Liquidator in the BVI insolvency proceeding of the Debtor's corporate parent and sole shareholder.  Now, in a last-ditch effort to delay Bickerton from exercising the powers of corporate governance he rightfully holds over Bozel S.A. (an entity that appears to have only a single asset in the United States),[2] and to prevent Bickerton from consummating a sale which would benefit the creditors of Wellgate, Marengère has violated basic principles of Luxembourg law and his fiduciary duties by filing a bankruptcy petition in blatant defiance of the clearly expressed wishes of the Debtor's sole shareholder.

7.     By this Motion, Bickerton seeks an order (i) enforcing his right of corporate governance over the Debtor, (ii) designating Bickerton the sole and exclusive "Responsible Person" for the Debtor, or, in the alternative, (iii) granting relief from the automatic stay to enable Bickerton to exercise control of the stock in and corporate governance of the Debtor's subsidiaries.

## JURISDICTION

8.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157(b)(2) and 1334(b). This Motion is core pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (G).[3] The statutory predicates for the Motion are 11 U.S.C. §§ 105(a), 362(d)(1), 1107(a), and Fed. R. Bankr. P. 9001(5).

---

[2] The Debtor's only known U.S. asset is its 100% membership interest in Bozel LLC, a company with its principal place of business in Boca Raton, Florida.

[3] Nothing in this Motion shall be construed as a consent to the appropriateness of the Debtor's choice of venue in this District.  Movant reserves the right to contest venue at a later date, including, without limitation, at such time and in the event that this Motion is denied.

## GENERAL FACTUAL BACKGROUND

### A.    The Parties Before the Court

9.     The Debtor is a public company limited by shares (a "*société anonyme*" or "S.A.") organized under the Grand Duchy of Luxembourg, and registered with the Luxembourg Trade and Companies Register under the number B107769.  A certified copy of the Debtor's *"Extrait"* (the "Certificate of Incorporation") is attached hereto as Exhibit B, and a certified translation thereof is attached hereto as Exhibit C.

10.     The Movant, Andrew D. Bickerton, is the Liquidator of Wellgate, having been duly appointed by The Eastern Caribbean Supreme Court in the High Court of Justice, Virgin Islands (the "BVI Court") pursuant to the BVI Insolvency Act, 2003 (the "BVI Insolvency Act"). A certified copy of the BVI Court's order (the "Order Appointing Liquidator") is attached hereto as Exhibit D.

11.     Wellgate is a business company organized under the laws of the British Virgin Islands (the "BVI").  Wellgate owns 100% of the stock of Bozel S.A.

12.     Bozel S.A. is a holding company with three subsidiaries of its own and owns 100% of the stock in the following three companies:

    a)     Bozel Mineracão S.A. (organized in Brazil) ("Bozel Brazil");

    b)     Bozel Europe S.A.S. (organized in France) ("Bozel Europe"); and

    c)     Bozel LLC (organized in the state of Florida) ("Bozel LLC," and together with Bozel Brazil and Bozel Europe, the "Bozel Subsidiaries").

13.     Through its three operating subsidiaries on three continents, Bozel S.A. is a worldwide leader in the sale of Calcium Silicon ("CaSi") and sells over 40% of the world's CaSi

*MIA\181,185,090v6 126432.010100*

powder output. Bozel S.A. invented CaSi Cored Wire, which is an industry-preferred ingredient in the production of high quality steel and steel alloys.

14.     Wellgate's business included financing the merger and acquisition of distressed assets and non-core subsidiaries of large conglomerates.

15.     Bozel Brazil and Bozel Europe are manufacturing companies. Bozel Brazil produces primarily CaSi and Cored Wire. Bozel Europe produces primarily Cored Wire. Bozel LLC primarily markets and distributes in the U.S. the products produced by Bozel Brazil. *See* Bickerton Declaration, ¶¶ 4-8.

### B.     Wellgate Proceedings in BVI

16.     In the Order Appointing Liquidator, dated March 9, 2010 and entered on March 10, 2010, the BVI Court directed that Bickerton be appointed liquidator of Wellgate pursuant to the BVI Insolvency Act. *See* Order Appointing Liquidator, ¶ 1.

17.     Among other things, the Order Appointing Liquidator authorized Bickerton to carry on the business of Wellgate, sell or otherwise dispose of its property, and undertake all acts and execute any document on behalf of Wellgate. *See* Order Appointing Liquidator, ¶ 2(v)-(vii).

### C.     Liquidator's Pre-Petition Actions

18.     On March 19, 2010, Bickerton sent an email to Marengère informing him of Bickerton's appointment as Liquidator of Wellgate. A true and correct copy of this letter (the "First Bickerton Letter") is attached hereto as Exhibit E.

19.     The First Bickerton Letter informed Marengère that as a result of the Order Appointing Liquidator, Marengère lacked statutory authority over Bozel S.A. Bickerton's email

further directed that Marengère should take "no actions" in relation to Bozel S.A. without Bickerton's "express authorization and written approval." *See* First Bickerton Letter, ¶ 6.

20. Despite having received these written instructions from Bickerton only three days before, Marengère executed a resolution on behalf of Bozel S.A. dated March 22, 2010, entitled "Consent in Lieu of Meeting of Directors," which purported to resolve, among other things, that Bozel S.A. file "as soon as practicable" a petition under Chapter 11 of the U.S. Bankruptcy Code. *See* DE 1, p. 5.

21. In further disregard and defiance of Bickerton's instructions, on April 6, 2010 (the "Petition Date") Marengère caused Bozel S.A. to commence this case by filing a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code. *See* DE 1. The sole or primary purpose of the Chapter 11 filing was a misguided and illegitimate effort to circumvent the Order Appointing Liquidator and to entrench Marengère in his asserted position of authority with the Debtor and, with that authority, to maintain control over the stock of the Bozel Subsidiaries and their extensive assets in the U.S., France and Brazil. *See* Bickerton Declaration, ¶ 12.

22. The illicit and improper nature of Marengère's deeds is further reflected by his failure to provide any notice to the Liquidator of the March 22, 2010 resolution or any advance notice of the Chapter 11 filing. *See* Bickerton Declaration, ¶ 13.

23. The illicit and improper tactics employed by Marengère are yet further reflected by the factual misrepresentations in the Chapter 11 petition itself. Upon information and belief, the address provided by Marengère and his purported counsel in the petition ("c/o Bozel LLC, 333 East 69th Street, New York, NY"), is not a business address of the Debtor, Bozel LLC or

any other related entity, but rather the residential address of a consultant for Bozel LLC who had no knowledge of and granted no consent to the use of his address for this improper purpose. *See* DE 1, p. 1; Bickerton Declaration, ¶ 14. Further, upon information and belief the Debtor does not have its "principal" place of business in New York, as is represented by Marengère in the Debtor's "Statement Regarding Employer Identification Number." *See* DE 1, p. 4; Bickerton Declaration, ¶ 15.

### D. Liquidator's Post-Petition Actions

24.     Since filing the Petition in direct contravention of the Liquidator's clear instructions, Marengère and his counsel have continued to rebuff and defy the Liquidator's authority. One day following the Petition Date, on April 7, 2010, Bickerton executed a document entitled "Resolutions of the Sole Shareholder" (the "Shareholder Resolutions"). The Shareholder Resolutions specifically resolve "to remove Mr. Michel Marengère from his office of director (*administrateur*) and of day-to-day managing director (*administrateur-délégué*) and to give effect to this removal as at March 10, 2010." A copy of the Shareholder Resolutions is attached hereto as Exhibit F.

25.     On April 8, 2010, Bickerton caused the *Journal Officiel du Grand-Duché de Luxembourg* to publish an "*Extrait des résolutions*" ("Resolutions Certificate"), which set forth the Shareholder Resolutions in substantial part. A copy of the Resolutions Certificate is attached hereto as Exhibit G, and a certified translation thereof is attached as Exhibit H.[4]

26.     On April 15, 2010, Bickerton transmitted to Marengère a letter with the subject "Corporate Governance and Control of Bozel S.A." (the "Second Bickerton Letter"). After

---

[4] Movant has taken steps to obtain a certified copy of the Resolution Certificate, which is accessible at http://www.etat.lu/memorial/memorial/2010/C/Html/0754/2010037837.html (accessed April 26, 2010).

summarizing the factual and legal predicates underlying his authority as Liquidator of Wellgate over Bozel S.A., and referencing various documents (copies of which were enclosed with the letter), Bickerton informed Marengère once again that Marengère lacked authority to take any action on behalf of Bozel S.A. without Bickerton's knowledge and consent. Specifically, the Second Bickerton Letter once again instructed Marengère "to exercise no further authority or control over, and undertake no further action on behalf of Bozel S.A. or otherwise engage in or interfere with its business, operations or affairs, and specifically to interpose no objection to the relief to be sought by my counsel from the U.S. Bankruptcy Court in the Chapter 11 case commenced without proper authorization." A true and correct copy of Second Bickerton Letter and the documents enclosed therewith is attached hereto as <u>Exhibit I</u>.

27. Later on that same day, Bickerton's undersigned U.S. counsel transmitted a second letter (the "<u>Demand Letter</u>") to purported counsel for the Debtor,[5] enclosing copies of the Second Bickerton Letter and its extensive enclosures in support of Bickerton's authority as Liquidator. In addition, the Demand Letter called attention to the decision of the Second Circuit Court of Appeals establishing the now well-settled rule that the rights of shareholders in respect of corporate governance remain unabated during reorganization proceedings under Chapter 11, as set forth in *Manville Corp. v. Equity Security Holders Committee, A.F. (In re Johns-Manville Corporation),* 801 F.2d 60, 64 (2d Cir. 1986). A true and correct copy of the Demand Letter is attached hereto as <u>Exhibit J</u>.

---

[5] The Debtor filed an application styled *Application of the Debtor for Authority to Employ Damon Morey LLP as its General Counsel* [DE 5] on April 27, 2010. In light of Mr. Marengère's lack of authority to act for the Debtor, the Liquidator will oppose any effort by Mr. Marengère to retain such counsel in this case or pay any legal or other professional fees from the Debtor's estate.

28.     In response to the Second Bickerton Letter, attorney Joseph G. Makowski, purporting to act on behalf of the three Bozel Subsidiaries, sent a letter to Bickerton on April 16, 2010 rejecting Bickerton's assertion of authority and demanding that Bickerton "immediately rescind all actions taken by yourself on April 7, 2010 to appoint yourself managing director of Bozel S.A. effective March 10, 2010." A copy of Makowski's letter to Bickerton dated April 16, 2010 is attached hereto as <u>Exhibit K</u>.

29.     On April 20, 2010, Bickerton received an undated document written in French, titled "Proces-Verbal Des Decisions Prises Par L'Associee Unique Effectif a Compter Du 2 Mars 2010," (the "<u>Bozel Europe Resolution</u>") and executed by Marengère purportedly on behalf of Bozel Europe. *See* Bickerton Declaration, ¶ 20. Among the purported amendments made by Marengère is one providing that Bozel Europe shareholders' sole and exclusive method of removing a director is to publish an agenda in both *Le Monde* and in the *Financial Times of London* at least thirty (30) days before the shareholder meeting takes place. A true and correct copy of the Bozel Europe Resolution is attached hereto as <u>Exhibit L</u>, and a certified translation thereof is attached hereto as <u>Exhibit M</u>.

## ARGUMENT

**A.      This Court Must Recognize the Rights of the Debtor's Sole Shareholder to Remove a Director as a Matter of Corporate Governance**

**(i)      Shareholder Rights of Corporate Governance Subsist During Reorganization**

30.     It has long been recognized in this and other Circuits that the rights of shareholders in respect of corporate governance remain unabated during reorganization proceedings under Chapter 11. *Manville Corp. v. Equity Security Holders Committee, A.F. (In re*

9

*Johns-Manville Corporation),* 801 F.2d 60, 64 (2d Cir. 1986); *see also Matter of Gaslight Club, Inc.,* 782 F.2d 767, 770 (7th Cir. 1986) ("We of course recognize the right of the majority of stockholders to be represented by directors of their own choice and thus to control corporate policy is paramount and will not be disturbed unless a clear case of abuse is made out."); *In re Riodizio, Inc.,* 204 B.R. 417, 426 (Bankr. S.D.N.Y. 1997) ("In the absence of 'clear abuse,' a bankruptcy court will not ordinarily interfere in corporate governance issues involving the debtor."); *In re Dark Horse Tavern,* 189 B.R. 576, 581 (Bankr. N.D.N.Y. 1995) (citing *Manville* for the "general rule" that corporate governance should remain uncompromised by a bankruptcy reorganization proceeding absent showing of "clear abuse."); *Fogel v. U.S. Energy Systems, Inc.,* 2008 WL 151857, *1 (Del.Ch., Jan. 15, 2008) ("[T]his Court, the Delaware Supreme Court, and federal bankruptcy courts have held that corporate governance does not cease when a company files a petition under Chapter 11 . . ."); *see generally* 5 *Norton Bankr. Law & Prac. 3d.* (2010) § 96:7 ("[T]he rights of shareholders of an insolvent corporation are well recognized. The rights include the ability to compel a shareholder meeting in order to exercise fundamental rights such as electing a new board of directors even when the purpose of electing the board is to exercise leverage against other constituencies."); *see also In re Hecks Properties, Inc.*, 151 B.R. 739 (S.D. W. Va. 1992) (providing a concise summary of the *Manville* litigation).

31.     The seminal and controlling authority on this proposition is, of course, the Second Circuit's decision in *Manville*. In that case, the Chapter 11 debtor asked the bankruptcy court to enjoin an action filed in Delaware state court by an equity committee which sought to compel the debtor to hold an annual shareholders' meeting as required by Delaware corporate law. 801 F.2d at 60. In granting the injunction, the bankruptcy court reasoned that "any shareholder meeting

and ensuing proxy fight has the potential to derail the entire Manville reorganization with devastating consequences," or would "at least . . . delay or halt plan negotiations." *Id.* at 64. The district court upheld the grant of injunctive relief, concluding that the equity committee had been motivated by a desire to "torpedo the reorganization or to acquire a bargaining chip in aid of its negotiation power." *Id.*

32.     On appeal, the Second Circuit recognized that the right of shareholders to govern their corporation is a prerogative ordinarily uncompromised by reorganization, and that, as a consequence, "a bankruptcy court should not lightly employ its equitable power to block an election of a new board of directors." *Manville*, 801 F.2d at 64. The Circuit Court also concluded that the equity committee's right to compel a shareholders' meeting under Delaware state law "may be impaired only if the Equity Committee is guilty of 'clear abuse' in attempting to call one." *Id.* (citation omitted).

33.     There can be no question in this case that the Liquidator's efforts to perfect his control over Bozel S.A. and the Bozel Subsidiaries raise no issues of "clear abuse," but rather the assertion of fundamental rights of corporate governance over the actions of a rogue director. Indeed, the only clear abuse in this case is that of Marengère in his repeated defiance of instructions from and authority of the Liquidator of the Debtor's sole shareholder. The Liquidator is, of course, responsible to the creditors of Wellgate and the BVI Court that appointed him; if the sole director of the Debtor is not accountable to its sole shareholder, then to whom is he accountable at all?

*MIA\181,185,090v6 126432.010100*

### (ii) Bozel S.A. Shareholder's Rights are Defined by Luxembourg Law

34.     The general rules of corporate governance remain the purview of state law in a bankruptcy proceeding. *In re New Orleans Paddlewheels, Inc.,* 350 B.R. 667, 691 (Bankr. E.D. La. 2006); *see also Fogel.,* 2008 WL 151857 at *1 ("Issues of corporate governance are best left to the courts of the state of incorporation.").

35.     Although the courts in *New Orleans Paddlewheels* and *Fogel* interpreted and applied the rule of *Manville* in the domestic context, the principle that corporate governance rights are generally a matter of the law in the place of incorporation is equally applicable in the international context, particularly when the jurisdiction whose law is being interpreted -- in this case, the law of Luxembourg -- comports in relevant part with the law in the United States.[6]

36.     Bozel S.A. is a duly incorporated public company limited by shares in the Grand Duchy of Luxembourg. *See* Certificate of Incorporation. This Court should accordingly look to Luxembourg law to determine the rights of corporate governance available to Wellgate as its sole shareholder.

### (iii) Luxembourg Law Would Recognize BVI Liquidator's Authority, and Would Grant BVI Liquidator Broad Powers as Sole Shareholder of Bozel S.A.

37.     In support of the relief requested in this Motion, the Liquidator relies upon the Declaration of Pierre-Olivier Wurth (the "Wurth Declaration"), a copy of which is attached hereto as Exhibit N.

---

[6] While there is no question that the Debtor is governed by the corporate laws of Luxembourg as its place of incorporation, even if the Court were to conclude that the laws of New York or Florida applied, the result would not change, as both New York and Florida would likely respect and give effect to the BVI Order Appointing Liquidator.

38.     Pierre-Olivier Wurth ("Wurth"), a member of the Luxembourg Bar since 1992, is currently special legal adviser in Luxembourg to the Liquidator. *See* Wurth Declaration, ¶¶ 1 - 2.

39.     As set forth in greater detail in the Wurth Declaration, among the principles of Luxembourg law are the following:

a)      Luxembourg courts customarily recognize and respect the orders of BVI courts related to bankruptcy, so long as such orders are not fundamentally at odds with Luxembourg's notions of fair play and substantial justice;[7]

b)      The authority of a duly appointed liquidator in a BVI insolvency proceeding to exercise control over the assets of the company subject to that proceeding, even if those assets were located in Luxembourg, would be recognized in a Luxembourg court of competent jurisdiction;

c)      A director of a Luxembourg S.A. owes fiduciary duties to the shareholders of the S.A., including the duties of care, loyalty and obedience;

d)      The sole shareholder of an S.A. is entitled to exercise all rights of corporate governance normally reserved to shareholders, including the right to appoint and remove directors of the S.A., and such action may be taken by means of a meeting without notice to any director, or by means of a written consent without notice to that director; and

e)      Luxembourg corporate law contains no prohibition against the ownership of capital shares in a Luxembourg S.A. by a foreign company or other entity, including an entity domiciled in the British Virgin Islands. *See* Wurth Declaration, ¶¶10 - 11, 12(a) - (c).

---

[7] While Movant does not believe it necessary to domesticate in Luxembourg the BVI Order Appointing Liquidator, Movant has taken steps in Luxembourg to do so.

**B.**   **This Court Should Appoint Bickerton as the Responsible Person to Take Charge of the Debtor's Affairs**

40.   Section 1107(a) of the Code states that the rights and powers of a debtor in possession are subject "to such limitations or conditions as the court prescribes." In addition, Section 105(a) of the Code authorizes the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

41.   The Seventh Circuit has recognized that "the court has considerable authority to interfere with the management of a debtor corporation in order to protect the creditors' interests." *Matter of Gaslight Club, Inc.,* 782 F.2d 767, 770 (7th Cir. 1986); *see also In re FSC Corp.,* 38 B.R. 346 (W.D. Pa. 1983) (authorizing the appointment of a "Responsible Officer" to vote the shares of the Debtor's subsidiaries to elect directors to fill a void in the boards of the debtor in possession and its subsidiaries); *Adelphia Communications Corp.,* 336 B.R. 610, 664-669 (Bankr. S.D.N.Y 2006) (denying appointment of non-trustee fiduciary, but implying that such an appointment may be made if it is in the interest of the estate, and be "necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings").

42.   In *Gaslight*, the debtor in possession was managed by the its president, who was also its majority shareholder. 782 F.2d at 769. Eight months into the case, a committee of creditors requested an order designating a third-party individual to "operate" the debtor and "to exercise its debtor in possession powers." *Id.* The debtor's president consented, and the court approved the appointment. *Id.* The newly-appointed third-party then proceeded to fire the president, who responded by moving to vacate the earlier order on the grounds that the court had improperly circumvented the statutory procedures for appointing a trustee. *Id.* at 769-70. Affirming the district court, the Seventh Circuit upheld the power of the court to appoint a

14

non-trustee fiduciary with power to operate the debtor and exercise its debtor in possession powers. *Id.* at 770-73.

43.     In *FSC*, the debtor had multiple first- and second-tier subsidiaries. 38 B.R. at 347. Immediately prior to the Chapter 11 filing the boards of the debtor and the subsidiaries resigned. The bankruptcy court entered an order designating the debtor's senior vice-president as the "Responsible Officer" of the debtor and the person required to perform the duties and rights of the debtor under the Bankruptcy Code. *Id.* Approximately six months later, the bankruptcy court entered a further order authorizing the Responsible Officer to vote the share of the debtor's subsidiaries "to elect directors and for such other shareholders actions shall be proposed for such subsidiaries." *Id.* at 348. Shareholders contested the appointment of the responsible officer, arguing that their right to elect directors should not be impaired, even when a bankruptcy intervenes. *Id.* at 348-49.

44.     In upholding the bankruptcy court, the district court upheld the authority of the bankruptcy court to appoint a "Responsible Officer" to, among other things, elect the board of directors of the debtor and debtor's subsidiaries. 38 B.R. at 349. In addition, the district court stated, without much discussion, that it was "further satisfied" that the authority granted to the responsible officer is contemplated by § 1107(a) of the Bankruptcy Code. *Id.* at 350.

45.     Thus, *FSC* stands for the proposition that the Bankruptcy Code authorizes a bankruptcy court to designate a responsible officer charged specifically with electing the boards of a debtor and a debtor's subsidiaries, and further that a bankruptcy court should look to the debtor's "state of incorporation" to determine whether such appointment is warranted. 38 B.R. at 349-359.

46.     Here, unlike *FSC*, the Debtor's sole shareholder and proposed Responsible Person are one and the same, thus eliminating the tension that existed in that case. Once the Court determines -- as surely it must -- that the Liquidator's valid exercise of corporate governance rights must be upheld and his ouster of Marengère as director must be respected, it is necessary in order to give effect to that determination that the resulting Order specifically appoint Bickerton as Responsible Person in control of the Debtor. With such control comes the authority to take the further acts necessary to direct the Bozel Subsidiaries, which have creditors and operations on three continents. Only through the entry of a clear, explicit and unequivocal Order can this Court expect that such third parties will deal directly with Bickerton, and that Marengère will be unable to continue his illicit intermeddling in those Subsidiaries and their substantial assets.[8]

### C.     Federal Rule of Bankruptcy Procedure 9001(5) Expressly Authorizes the Appointment of a Controlling Shareholder

47.     Federal Rule of Bankruptcy Procedure 9001(5) provides as follows:

When any act is required by these rules to be performed by a debtor or when it is necessary to compel attendance of a debtor for examination and the debtor is not a natural person: (A) if the debtor is a corporation, 'debtor' includes, if designated by the court, any or all of its officers, members of its board of directors or trustees or of a similar controlling body, *a controlling stockholder* or member, or any other person in control.

Fed. R. Bankr. P. 9001(5) (emphasis added). Thus, under the plain meaning of Bankruptcy Rule 9001(5), the Court may designate a "controlling stockholder" to undertake actions on behalf of the Debtor.

---

[8] In connection with the requested relief, the Liquidator would reserve the right to seek further injunctive and other equitable relief and damages against Marengère and others who have acted in concert with him in furtherance of his improper and unauthorized usurpation of corporate authority on behalf of the Debtor and the Bozel Subsidiaries.

48. In *In re Red River Energy, Inc.,* 409 B.R. 163, 175 (Bankr. S.D. Tex. 2009), an involuntary Chapter 7 case, the debtor was a completely defunct corporation bereft of any officers and directors. 409 B.R. at 166. As the debtor was a corporation, as opposed to an individual, the bankruptcy court appointed a "representative" to fulfill those duties of the debtor that were "absolutely essential" to the administration of the estate, including the filing of schedules and the releasing of other information about the debtor under oath. *Id.* The court granted a motion filed by the chapter 7 trustee to appoint two corporate shareholders (one of which was a Cayman Islands corporation that held 45% of the debtor's stock) to fulfill these duties, and in the process rejected a plea by the same shareholders that the debtor's former chief restructuring officer be appointed instead. 409 B.R. at 166.

49. As reflected by the decision in *Red River*, the bankruptcy court has authority to appoint a representative to fulfill the duties of the debtor under Fed. R. Bankr. P. 9001(5), which "expressly authorizes the appointment of a controlling shareholder." 409 B.R. at 175. It was of no concern to the court in that case that the controlling shareholder was an offshore corporation, and indeed this Court should have no such concern because Debtor's controlling BVI shareholder is itself controlled by a Liquidator duly appointed by and accountable to the BVI Court that appointed him.[9]

50. In his capacity as Liquidator of the Debtor's 100% shareholder, Bickerton controls the stock of the Debtor and is clearly the Debtor's "controlling stockholder" for

---

[9] The duties for which the representative was appointed included "[to] sign the schedules and statement of financial affairs, to testify at the meeting of creditors, and to be the debtor's representative thereafter." 409 B.R. at 178. In addition, the *Red River* court specifically held that a controlling shareholder need not have extensive knowledge of the debtor's affairs as a prerequisite to designation under Rule 9001(5). *Id.* ("Bankruptcy Rule 9001(5)…contains no such 'knowledge' requirement. Indeed, if anything Bankruptcy Rule 9001(5) impliedly recognizes that the appointed representative might *not* have substantial knowledge about the debtor's affairs.")

purposes of Rule 9001(5).  As such, this Court has the authority to designate Bickerton Debtor's representative for purposes of, among other things, doing "any act" required by the Federal Rules of Bankruptcy Procedure.  *See* Fed. R. Bankr. P. 9001(5); *Red River Energy*, 409 B.R. at 175. Such acts include the filing of reports of financial information of entities in which a Chapter 11 estate holds a controlling or substantial interest, in this case, the Bozel Subsidiaries.  *See* Fed. R. Bankr. P. 2015.3.

51.    The designation of Bickerton as the debtor's controlling stockholder and representative under Rule 9001(5) is necessary to bring stability and accountability to the Debtor's management and directorship.  As stated earlier, in the course of his investigation of Wellgate, the Liquidator has obtained information suggesting that a significant amount of funds have vanished from the accounts of one of the Debtor's subsidiaries.  *See* Bickerton Declaration, ¶ 23.  Bickerton has been precluded from viewing the books and records of Bozel S.A. and its subsidiaries due to Marengère's repeated defiance of the Order Appointing Liquidator.  *See* Bickerton Declaration, ¶¶ 9, 18, 23.  Only through appointment of Bickerton as Responsible Person or representative of the Debtor can he ensure that the Debtor transacts fairly with its creditors and those of the Bozel Subsidiaries, while fulfilling his obligations to the BVI Court in the liquidation of Wellgate as their ultimate parent.

**D.    This Court Should Grant Relief from Stay to Allow Debtor's Sole Shareholder to Exercise Control of Stock in and Corporate Governance of Subsidiary Entities**

52.    Among other things, the automatic stay precludes any party other than the Debtor from taking "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  In this case, the shares

of the Bozel Subsidiaries are the sole or principal assets of the Debtor's estate, and with those shares comes the power to control the assets and business operations of the Subsidiaries on three continents.

53.     On request of a party in interest, after notice and a hearing, Section 362(d)(1) of the Bankruptcy Code provides that the court "shall" grant relief from the automatic stay "such as by terminating, annulling, modifying, or conditioning such stay" "for cause" shown.  *See* 11 U.S.C. 362(d)(1).

54.     The Bankruptcy Code does not define the meaning of the phrase "for cause." *Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990).  Whether to grant relief from the automatic stay is a matter of the Court's discretion.  *Id.*

55.     Courts have repeatedly recognized in a variety of contexts that relief from the automatic stay is required where the Debtor has acted in bad faith.  *See, e.g., In re Dixie Broadcasting, Inc.,* 871 F.2d 1023 (11th Cir. 1989) (affirming the trial court's granting of relief from stay on numerous, cumulative grounds, including evidence that petition was filed as a "diversionary tactic," in order to continue state court litigation);  *In re Eclair Bakery Ltd.,* 255 B.R. 121 (Bankr. S.D.N.Y. 2000) (granting relief from stay to remove debtor from possession of real estate on the basis of a variety of factors, including the debtor's "efforts to sidestep an order of a federal judge, and forum shopping");  *In re 234-6 West 22nd St. Corp.,* 214 B.R. 751 (Bankr. S.D.N.Y. 1997) (granting relief from stay to conduct a foreclosure sale on the basis of, among other things, debtor's filing of the bankruptcy case solely to thwart such foreclosure sale).

56.     The same factors that compel validation of the Liquidator's legitimate acts of corporate governance and appointment as Responsible Person or representative of the Debtor operate to establish "cause" to annul and grant relief from the automatic stay in this case.  The very filing of the Chapter 11 petition was an act of defiance by Marengère, who has used the automatic stay as a shield to maintain control over the Debtor's stock in the Bozel Subsidiaries, and thereby their operations, assets and affairs.  In conjunction with the remainder of the relief sought in this Motion, the Court should grant full, complete and immediate relief from the automatic stay so as to enable Bickerton to undertake such corporate action as necessary to perfect his control over the Bozel Subsidiaries, terminate Marengère's authority with respect to those entities, and thereby fulfill his obligations as Liquidator of their ultimate parent and controlling shareholder.

57.     Bickerton reserves his right to move for sanctions against Marengère personally.

## NO PRIOR REQUEST

58.     No prior request for the relief sought herein has been made to this or any other court.

## CONCLUSION

**WHEREFORE**, Movant respectfully requests that this Court enter an Order (a) enforcing the corporate governance rights of the Liquidator; (b) designating the Liquidator a "Responsible Person" or sole authorized representative of the Debtor; (c) granting the Liquidator relief from the automatic stay to exercise control of the stock in and corporate governance of the Bozel Subsidiaries; and (d) granting such other and further relief as is just and proper, including the reservation of jurisdiction to issue sanctions against Marengère personally.

20

Dated: New York, New York      GREENBERG TRAURIG, LLP
        April 28, 2010

By:    */s/ Allen G. Kadish*
       Allen G. Kadish
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
kadisha@gtlaw.com

and

Mark D. Bloom (pro hac vice pending)
Paul J. Keenan (pro hac vice pending)
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
bloomm@gtlaw.com
keenanp@gtlaw.com

Attorneys for Andrew Bickerton as Liquidator of
  Wellgate International Limited

# INDEX TO EXHIBITS

| A | Bickerton Declaration |
|---|---|
| B | Certificate of Incorporation (French) |
| C | Certificate of Incorporation (English Translation) |
| D | Order Appointing Liquidator |
| E | First Bickerton letter |
| F | Shareholder Resolutions |
| G | Resolutions Certificate (French) |
| H | Resolutions Certificate (English Translation) |
| I | Second Bickerton Letter |
| J | Demand Letter |
| K | Letter by Makowski to Bickerton Dated April 16, 2010 |
| L | Bozel Europe Resolution (French) |
| M | Bozel Europe Resolution  (English Translation) |
| N | Wurth Declaration |

*MIA\181,185,090v6 126432.010100*