GREENBERG TRAURIG, LLP
Allen G. Kadish
Adam C. Dembrow
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
kadisha@gtlaw.com
dembrowa@gtlaw.com

Mark D. Bloom (admitted *pro hac vice*)
333 Avenue of the Americas, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
bloomm@gtlaw.com

Attorneys for the Debtor and Debtor in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| BOZEL S.A., | : | Case No. 10-11802 (AJG) |
| | : | |
| Debtor. | : | |

--------------------------------------------------------x

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS
APPROVING A POSTPETITION CREDIT AGREEMENT AND
GRANTING RELATED LIENS AND SUPERPRIORITY STATUS**

Bozel S.A. ("Bozel"), as debtor and debtor in possession, respectfully states as follows:

**Summary of Relief Requested**

1. By this motion (the "Motion"), Bozel seeks the entry of interim and final orders, pursuant to sections 105(a), 362, and 364 of title 11 of the United States Code §§ 101, *et seq.* (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of the Bankruptcy Court for the

Southern District of New York (the "Local Rules"), authorizing Bozel to obtain unsecured postpetition financing with superpriority status, in the form of a revolving credit line in an aggregate principal amount at any time outstanding not to exceed U.S. $8,000,000, pursuant to the Post-petition Credit and Security Agreement, by and between Bozel, Bozel Brazil, and Bozel France, collectively as borrower, and Japan Metals & Chemicals Co., Ltd. ("JMC"), as lender, dated November 30, 2010 (the "Postpetition Credit Agreement"). The Postpetition Credit Agreement also contemplates that Bozel Brazil and Bozel France, non-debtor subsidiaries of Bozel, will grant to JMC security interests in substantially all of their assets. Bozel will use the proceeds of the Postpetition Credit Agreement to cover the costs of operating the businesses of Bozel Brazil and Bozel France, and the costs of its restructuring efforts. A copy of the Postpetition Credit Agreement is attached hereto as Exhibit A.[1]

2. Bozel's most valuable assets are its stock interests in Bozel Brazil and Bozel France. The relief requested in this Motion is critical to maintaining the liquidity and continued profitability of Bozel Brazil and Bozel France, as well as Bozel's ability to operate through the pendency of this case, while Bozel continues the process of marketing and selling its interests in Bozel Brazil and Bozel France. Without the funds to be supplied pursuant to the Postpetition Credit Agreement, neither Bozel Brazil nor Bozel France will have the raw materials they need to continue operating, including a reliable supply of electricity and charcoal necessary to power their furnaces and produce their products. Additionally, the cash from the Postpetition Credit Agreement will be used to permit Bozel to continue to fund the cost of its restructuring.

---

[1] Exhibit A contains signature pages for Bozel and JMC only. It is expected that the boards of Bozel Brazil and Bozel France will approve the Postpetition Credit Agreement shortly, and that signature pages for those two companies will then be promptly filed with the Court.

2

MIA181,511,423v7

3. Both Bozel Brazil and Bozel France continue to operate on a day-to-day basis with little or no excess cash available. Payment of current debts is limited by actual cash receipts and there is no margin of error or cushion for any unanticipated events or expenses. Postpetition financing is needed to provide Bozel access to funds in order to address these issues and to conduct its Chapter 11 case in a manner that will maximize the value of Bozel's estate for the benefit of its creditors.

4. As demonstrated herein and in the accompanying Declaration of Gerald Shapiro, sworn to November 30, 2010 (the "<u>Shapiro Decl.</u>"), a copy of which is attached hereto as <u>Exhibit B</u>, the terms of the Postpetition Credit Agreement are extremely favorable to Bozel. The financing offered by JMC contemplates an extremely low interest rate of 4% and contains other terms and conditions (including fees, reporting requirements, covenants, representations and warranties) which are at or below market. No other potential lender has offered terms that are equal to or superior to those offered by JMC. *See* Shapiro Decl., ¶¶ 6-8. Bozel's desire to enter into the Postpetition Credit Agreement reflects sound business judgment that is in the best interest of its estate. Therefore, the Court should grant the Motion in all respects.

5. Bozel also requests that this Court hold an interim hearing on the relief sought in the Motion on December 7, 2010. Although this date is less than 14 days from the filing of the Motion, interim relief is necessary to avoid immediate and irreparable harm to the estate pending a final hearing. As described more fully in the Shapiro Decl., Bozel needs interim approval of postpetition financing in order to obtain funding in an amount of approximately $4,200,000 to satisfy immediate cash needs for the payment of past due electric bills and additional charcoal inventory supplies, without which Bozel runs significant risk of diminishing its value as a result

3

of irreparable harm to the physical assets and production capacity of its key operating subsidiary, Bozel Brazil. *See* Shapiro Decl., ¶¶ 9-14.

## Summary of Postpetition Credit Agreement

6. In accordance with Bankruptcy Rule 4001(c)(1)(B) and Local Rule 4001-2, the following is a concise statement that summarizes and sets out the location within the Postpetition Credit Agreement of all material provisions of the Postpetition Credit Agreement.[2]

| | |
|---|---|
| **Revolving Credit Facility:** | Revolving credit facility in an amount not to exceed an aggregate principal amount of U.S. $8,000,000. Each Revolving Advance shall be in the minimum amount of U.S. $100,000. Sections 1.1 and 2.1(c).[3] |
| **Borrowers:** | Each of Bozel, Bozel Brazil and Bozel France are borrowers under the Postpetition Credit Agreement and are each jointly and severally liable for all borrowings. Section 1.1. |
| **Use of Proceeds:** | Before entry of the Final Borrowing Order, Bozel, Bozel Brazil and Bozel France shall use proceeds of the Revolving Advances only (i) to make payments owed by Bozel Brazil to CEMIG as of the date hereof and (ii) to purchase Necessary Charcoal. After entry of the Final Borrowing Order, Bozel, Bozel Brazil and Bozel France shall use proceeds of the Revolving Advances only to finance the working capital of Bozel Brazil and Bozel France (including any overdue or current maintenance needs) and the Carve-Out. |
| **Interest:** | Each Revolving Advance will bear interest at 4% per annum. Section 2.4(a). During a Default Period, Revolving Advances will bear interest at 6% per annum. Sections 1.1 and 2.4(b). |
| **Maturity Date:** | "Maturity Date" means the earliest of (i) March 31, 2011, (ii) the Acquisition Closing Date or (iii) thirty days following the date on which the Bankruptcy Court disapproves of JMC as the preferred bidder or stalking horse bidder for the Bozel Share Purchase. Section 1.1. |

---

[2] To the extent that there are any inconsistencies between the summary contained herein of the Postpetition Credit Agreement and the terms and conditions of the Postpetition Credit Agreement, the terms of the Postpetition Credit Agreement control. Capitalized terms used but not defined in this section shall have the meanings given to them in the Postpetition Credit Agreement.

[3] All section references in the summary are to the Postpetition Credit Agreement.

4

| | |
|---|---|
| **Termination Date:** | "Termination Date" means the earliest of (a) the Maturity Date, (b) the date JMC demands payment of the Obligations following an Event of Default pursuant to Section 5.1, or (c) the date of closing of any sale of all or a substantial part of the Collateral. Section 1.1 |
| **Superpriority Claim:** | JMC will be granted a Superpriority Claim pursuant to Section 364(c)(1) of the Bankruptcy Code, having priority over any or all administrative expenses including administrative expenses specified in Section 503 and 507 of the Bankruptcy Code. The Superpriority Claim is subject to the Carve-Out. Section 3.2. |
| **Collateral:** | The Loan is unsecured as to Bozel. The Bozel Subsidiaries pledge, assign and grant to JMC, a lien on and security interest in substantially all of their assets. Section 3.1. The grant of security interest is junior to the Carve-Out. Section 1.1. |
| **Carve-Out:** | "Carve-Out" means fees and expenses of professionals retained by Bozel pursuant to Section 327 of the Bankruptcy Code from the Petition Date until the Maturity Date. Section 1.1. |
| **Indemnification of Lender:** | Bozel Brazil and Bozel France (but not Bozel) agree to indemnify JMC and each Related Party of JMC against certain events. Section 8.148. |
| **Conditions Precedent to Borrowings:** | The Postpetition Credit Agreement contains ordinary and reasonable conditions precedent to borrowings, including receipt of executed documents, lack of certain litigation; accuracy of representations and warranties; no defaults or Events of Default shall be continuing; entry by the Bankruptcy Court of the Interim Borrowing Order and Final Borrowing Order; Bozel shall have recommended to the Bankruptcy Court that the Bankruptcy Court approve JMC as the preferred bidder or staling horse bidder for the shares of Bozel Brazil and Bozel France; JMC shall have received all necessary third-party and governmental waivers and consents; delivery of an officer's certificate to JMC; delivery to JMC of a budget in form and substance reasonably acceptable to JMC; delivery to JMC of the results of a recent lien search in all relevant jurisdictions showing no liens on the Collateral; delivery to JMC of legal opinions of French and Brazilian counsel; and other ordinary and reasonable conditions precedent. |
| **Events of Default:** | The Postpetition Credit Agreement contains ordinary and reasonable Events of Default including the following any payment default; defaults in the performance or breach, of any covenant in the Loan Documents; inaccuracy in any material respect of any representation or warranty of Bozel, Bozel Brazil or Bozel France; any of the Borrowers default in making any payment of any principal or interest of any Indebtedness incurred after April 6, 2010; certain Events of Default under |

5

Indebtedness; failure of a bidding procedure order with respect to the Bozel Share Purchase in form and substance acceptable to JMC to be entered by the Bankruptcy Court and not stayed by December 27, 2010; failure of Bozel to obtain entry by the Bankruptcy Court of one or more final and non-appealable orders approving the Bozel Share Purchase on or prior to January 29, 2011; dismissal or conversion to chapter 7 of the Case; the filing of an application by Bozel for the approval of any Superpriority Claim which is pari passu with or senior to the claims of JMC, or the granting of any such pari passu or senior Superpriority Claim; payment of certain Indebtedness without the consent of JMC; entry of a judgment in an aggregate amount exceeding $1,000,000 against any of the Borrowers; confirmation of a Plan of Reorganization that does not provide for payment in full in cash of the Obligations to JMC; any Loan Document shall cease to be effective or shall be contested by any of the Borrowers; the filing of a pleading or proceeding by any of the Borrowers which could reasonably be expected to result in a material impairment of the rights or interests of JMC under any Loan Document; entry of an order reversing, amending, supplementing or staying for a period in excess of five days the Interim Borrowing Order or Final Borrower Order; failure by Bozel to continue to own 100% of the shares of Bozel France and Bozel Brazil; commencement of an insolvency case by or against Bozel Brazil or Bozel France which remains undismissed for a period of 90 days; and certain other ordinary and typical Events of Default.

| | |
|---|---|
| **Remedies:** | The Postpetition Credit Agreement contains ordinary and reasonable remedies including declare the Obligations to be due and payable; terminate any further commitment to lend pursuant to the Postpetition Credit Agreement; JMC may exercise and enforce any and all rights and remedies available upon default to a secured party under the UCC or other applicable law, including the right to take possession of the Collateral (without a prior hearing or notice thereof, which each of the Borrowers waives) and the right to sell, lease or otherwise dispose of any or all of the Collateral; JMC may compel Bozel to sell any or all of its assets pursuant to Section 363(b) of the Bankruptcy Code and to credit bid the amount of the Revolving Advances pursuant to Section 363(k) of the Bankruptcy Code; and to exercise any other rights and remedies available to it by law or agreement. Section 5.2 |
| **Additional Provisions Disclosed Pursuant to Local Rule 4001-2(a):** | The Postpetition Credit Agreement does not contain any fees, including letter of credit fees, commitment fees, or the like, but does require that the Borrowers pay certain out-of-pocket expenses of JMC incurred in connection with the financing; the Postpetition Credit Agreement does not contain any provision that would limit the Court's power or discretion in a material way, or would interfere with the exercise of the |

fiduciary duties, or restrict the rights and powers of Bozel in connection with the operation, financing, use or sale of the business or property of the estate.

**Jurisdiction, Venue and Statutory Predicates**

7. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is core pursuant to 28 U.S.C. § 157(b)(2)(D). Venue is proper in this district pursuant to 28 U.S.C. § 1408. Bozel seeks the relief requested herein pursuant to Sections 105(a), 362, and 364 of the Bankruptcy Code, Rule 4001 of the Bankruptcy Rules, and Rule 4001-2 of the Local Rules.

**Background**

8. Bozel is a company limited by shares (a "*société anonyme*" or "S.A.") organized under the Grand Duchy of Luxembourg, and registered with the Luxembourg Trade and Companies Register under the number B107769. Bozel is a holding company which owns 100% of the stock in its three subsidiaries: Bozel Mineracão S.A. (organized in Brazil) ("Bozel Brazil"); Bozel Europe S.A.S. (organized in France) ("Bozel France"); and Bozel LLC (organized in the state of Florida) ("Bozel LLC").

9. Through its three operating subsidiaries on three continents, Bozel is a worldwide leader in the sale of calcium silicon ("CaSi") and sells over 40% of the world's CaSi powder output. Bozel invented CaSi Cored Wire, which is an industry-preferred ingredient in the production of high quality steel and steel alloys.

10. Bozel Brazil and Bozel France are manufacturing companies. Bozel Brazil produces primarily CaSi and Cored Wire. Bozel France produces primarily Cored Wire. Bozel LLC primarily markets and distributes in the United States the products produced by Bozel Brazil. The ownership interests of Bozel Brazil and Bozel France are the most valuable assets of Bozel.

7

11. 100% of Bozel's shares are owned by Wellgate International, Ltd. ("Wellgate"). Wellgate is a business company organized under the laws of the BVI., which is undergoing liquidation in a judicial proceeding overseen by the Eastern Caribbean Supreme Court in the High Court of Justice, Virgin Islands pursuant to the British Virgin Islands ("BVI") Insolvency Act, 2003.

12. Andrew Bickerton was duly appointed to his position as Liquidator of Wellgate on March 10, 2010, by the Eastern Caribbean Supreme Court in the High Court of Justice, Virgin Islands. Wellgate's business included financing the merger and acquisition of distressed assets and non-core subsidiaries of large conglomerates.

13. This case was commenced by the filing of a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code on April 6, 2010. Bozel operates its business and manages its properties as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. On May 21, 2010, James L. Garrity, Jr. was appointed as examiner in this case. That appointment was confirmed by the Court on May 25, 2010 and terminated on October 22, 2010. No creditors' committee or trustee has been appointed in this case.

**Bozel's Attempt to Obtain DIP Financing**

14. Bozel and its advisors solicited indications of interest in DIP financing from several "usual and customary" sources of DIP financing in order to address both the immediate and mid-term cash needs of Bozel, and to preserve and maintain its assets while they are prepared for sale. None of these financing sources were willing to pursue this financing opportunity for a number of reasons, including the location of Bozel's assets and operations on three continents, the existence of senior secured liens in Bozel's assets, the existence of Bozel's pending Chapter 11 case, the pending liquidation proceeding in the British Virgin Islands for

8

MIA181,511,423v7

Bozel's sole shareholder, Wellgate, and the relatively small amount of money that Bozel sought to borrow.

15. To obtain DIP financing and to further the process of selling Bozel's assets, Bozel and its advisors also solicited offers to purchase Bozel's assets from strategic and financial buyers. As part of this process, potential purchasers interested in acting as stalking horse bidder were required to submit term sheets for the purchase of Bozel's assets and DIP financing.

16. Four potential purchasers submitted indications of interest, each of which contained proposals to provide DIP financing and to purchase Bozel's assets. These offers were evaluated by Bozel and its advisors. Bozel proceeded to negotiate the terms of the Postpetition Credit Agreement with JMC.[4] Bozel believes the terms set forth in the Postpetition Credit Agreement are very favorable to Bozel and approval of the Postpetition Credit Agreement is in the best interest of Bozel, its estate and its creditors. Among other things, the Loan is unsecured as to Bozel, though it requires the grant of a superpriority unsecured claim by Bozel and a security interest in substantially all of the assets of Bozel Brazil and Bozel France; an interest rate of 4% and a default interest rate of 6%; no payment of fees or expenses other than certain actual out-of-pocket expenses of JMC in connection with the Loan; liberal conditions and covenants; and a maturity date which is designed to permit Bozel to sell its assets to JMC or some other purchaser.[5]

---

[4] Bozel believes JMC is capable of performing all of its obligations under the Postpetition Credit Agreement. JMC is a strategic purchaser with its headquarters in Tokyo, Japan. JMC has been in existence for more than 90 years, had 2009 net sales of more than $28,000,000,000 yen (approximately $345,000,000) and has business lines in Ferroalloy, non-Ferroalloy metal, materials for electrical parts and magnets, industry owned thermal power plants and agro-chemicals.

[5] Bozel intends to file a motion to approve a purchase agreement with JMC providing for the sale to JMC of its shares in Bozel Brazil and Bozel France. There is no requirement that Bozel sell its assets to JMC as part of the DIP financing transaction. However, Bozel believes, in its business judgment, that JMC has put forth the highest and best offer to purchase its assets, and accordingly should be approved by this Court as the stalking horse purchaser

MIA181,511,423v7

**Bozel's Need for DIP Financing**

*A.     Need for Interim Approval of DIP Financing*

17.     The total amount of financing contemplated by the Postpetition Credit Agreement is $8,000,000. Bozel requires interim approval of DIP financing prior to a final hearing on the Motion in order to obtain funding of approximately $4,200,000 to satisfy immediate cash needs for the payment of past due electric bills and additional charcoal inventory supplies for Bozel Brazil. Without this funding Bozel runs significant risk of diminishing its value as a result of irreparable harm to the physical assets and production capacity of its key operating subsidiary in Brazil.

18.     In light of their lack of access to the capital markets and the diversion of some $14 million or more in sales proceeds by prior management, the Bozel Subsidiaries have been forced to manage their cash receipts and disbursements closely. In particular, during 2010 Bozel Brazil was required to defer payment for two months of electricity and enter into an agreement with CEMIG that it would bring its account current before December 21, 2010. If Bozel Brazil fails to make this payment on a timely basis it risks losing its only source of electric power, thereby significantly limiting its ability to continue operating.

19.     Absent interim approval of the initial phase of requested financing, Bozel Brazil faces the danger that a portion of its electricity may be re-allocated to other industrial users, or that its power supply may be shut off entirely. Either of these scenarios would cause irreparable harm to the value of the business, and could also cause irreparable damage to the three electric furnaces used in the production process.

---

for the assets. Procedures will be put in place to allow interested parties to submit offers for Bozel's assets and, if necessary, an auction will be held to determine the highest and best offer for the assets.

20. Bozel Brazil's production plant is situated in São João del Rei, a remote portion of Brazil. Its remote location some five hours drive from the nearest major city leaves it susceptible to delivery delays of the raw materials caused by Brazil's "rainy season," which begins in November and peaks in January and February each year, and its effect on roadways leading to the plant. For this reason, Bozel Brazil typically would not enter this time of the year with less than a thirty-day on-site supply of its largest raw material item, charcoal.

21. Due to its current lack of liquidity, Bozel Brazil currently maintains only a five day's supply of charcoal, which is effectively a "just-in-time" situation. According to Bozel Brazil's management, good industry practice would dictate having approximately thirty days charcoal supply on hand. Given the limited supply of charcoal on hand, and the distinct possibility of a seasonal lack of access to the plant by delivery vehicles because of rain damage to roads, any further delay in obtaining charcoal to feed into the furnaces for production could put Bozel Brazil at risk of needing to perform a controlled shutdown of one or more of its furnaces, a time consuming, disruptive and expensive process. This would also result in significant down-time even after adequate charcoal inventory is acquired on site while the furnaces are re-started and brought back to operating temperature. This down time would result in insufficient production to support orders on hand, potentially forcing customers to look to Bozel Brazil's competitors to satisfy their short term needs, and therefore risking future customer relationships.

22. At current charcoal pricing and foreign exchange rates, it is estimated that obtaining a 30-day supply of charcoal will require approximately $1,000,000 of additional cash funding.

23. Both Bozel Brazil and Bozel France continue to operate on a day-to-day basis with little or no excess cash available. Payment of current debts is limited by actual cash receipts and there is no margin of error or cushion for any unanticipated events or expenses. For this reason, Bozel seeks additional DIP financing (on a non-emergency basis) of up to approximately $3,800,000 for necessary deferred maintenance and general working capital needs based on its forecast through March 31, 2011. Thus, the total amount of DIP financing sought is $8,000,000.

**Bozel Should be Authorized to Obtain**
**Postpetition Financing Through the Postpetition Credit Agreement**

*A. The Postpetition Credit Agreement Is in Bozel's Best Interest*

24. The Court should authorize Bozel to enter into the Postpetition Credit Agreement with JMC as an exercise of Bozel's sound business judgment. The statutory predicates for Bozel to enter into the Postpetition Credit Agreement require the exercise of its sound business judgment as debtor and debtor in possession.

25. Section 364 of the Bankruptcy Code authorizes a debtor to obtain secured or superpriority financing under certain circumstances. Provided that an agreement to obtain secured credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance with its reasonable business judgment in obtaining such credit. *See In re YL W. 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) ("Courts have generally deferred to a debtor's business judgment in granting section 364 financing."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 [of the Bankruptcy Code] is to be utilized on grounds that permit [a debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that

leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest").

26. In addition, section 105(a) of the Bankruptcy Code grants courts authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). This provision is "the basis for a broad exercise of power [by the Court] in the administration of a bankruptcy case." *In re Flores*, 291 B.R. 44, 54 (Bankr. S.D.N.Y. 2003), *superseded by statute on other grounds*, Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 303(b), 119 Stat. 23, *as recognized in In re Elmendorf*, 345 B.R. 486 (Bankr. S.D.N.Y. 2006) (quoting 2 COLLIER ON BANKRUPTCY, ¶ 105.01 at 105-5-6 (Lawrence P. King, et al. eds., 15th Ed. Rev. 2000)).

27. Entry into the Postpetition Credit Agreement is an exercise of Bozel's sound business judgment that warrants approval by the Court. Bozel and its wholly-owned subsidiaries are in dire need of cash for operational needs and to administer this Chapter 11 case. Due to such circumstances, Bozel entered into negotiations with JMC for postpetition financing, as well as for the purchase of Bozel's assets, after undertaking a detailed investigation as to the projected financing needs of Bozel and its operating subsidiaries during the pendency of this case, and considering the advice of its experienced professional advisors. Bozel negotiated with JMC in good faith, at arm's-length, and with the assistance of its counsel, in order to obtain postpetition financing on terms favorable to Bozel that satisfy Bozel's needs with respect to its restructuring and the ongoing business operations of its wholly-owned subsidiaries. Given the four-month delay caused by the corporate governance dispute with Marengère, and the potential for other contingencies or delays, it has become clear to Bozel that it needs the funds to be provided pursuant to the Pospetition Credit Agreement in order to finance operational and restructuring

13

costs. Based on the advice of counsel and other professionals, and Bozel's own analysis, Bozel has determined that the Postpetition Credit Agreement provides a greater amount of financing on more flexible terms and at lower cost than any other reasonably available alternative.

28. The Postpetition Credit Agreement will provide Bozel with a revolving line of credit up to a maximum principal amount of $8,000,000, an amount that Bozel has determined should be sufficient to support its reorganization and the operational activities of its subsidiaries. Because the Postpetition Credit Agreement provides for a revolver, rather than a more traditional term loan, Bozel will be charged interest only on the amounts actually drawn, and only for the period in which those amounts remain outstanding. Further, the interest rate to be charged under the Postpetition Credit Agreement is significantly lower than the rate Bozel could reasonably expect to obtain from any other lender, and represents, in the informed judgment of Bozel and its advisors, the best rate available to Bozel for postpetition financing. No other potential lender has offered financing terms that are comparable to the terms offered by JMC. As such, entering into the Postpetition Credit Agreement is an exercise of Bozel's sound business judgment and should be approved by the Court.

> B. *Bozel Should be Authorized to Obtain Postpetition Financing on a Secured and Superpriority Basis*

29. Section 364 of the Bankruptcy Code authorizes a debtor to obtain, in certain circumstances, postpetition financing on a secured or superpriority basis. Specifically, section 364(c) of the Bankruptcy Code provides, in pertinent part, that the Court, after notice and a hearing, may authorize a debtor that is unable to obtain credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code to obtain credit or incur debt:

> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of [the Bankruptcy Code];

14

> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

30. To satisfy the requirements of section 364(c) of the Bankruptcy Code, a debtor need only demonstrate "by a good faith effort that credit was not available" to the debtor on an unsecured or administrative expense basis. *Bray v. Shenandoah Fed. Savs. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986). "The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Id.* When few lenders are likely to be able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom.*, *Anchor Savs. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

31. Bozel's limited revenues from the operations of its wholly-owned subsidiaries and its exposure to liabilities preclude it from obtaining credit on an unsecured or administrative expense basis. JMC has refused to provide Bozel with postpetition financing on terms other than a secured and superpriority basis. In order to obtain the benefits to be provided under the Postpetition Credit Agreement, therefore, Bozel must be allowed to provide JMC with the liens and security interests, described above, securing Bozel's repayment obligations under the Postpetition Credit Agreement, as provided in section 364(c)(2) of the Bankruptcy Code,[6] as well

---

[6] Bozel is not aware of any liens on or security interests in any of the collateral on and in which JMC will be granted liens and security interests under the Postpetition Credit Agreement. Bozel's counsel in France and Brazil is, however, finalizing a lien search and document review to confirm the absence of liens or security interests in the Collateral.

as to grant those repayment obligations superpriority administrative expense status as provided for in section 364(c)(1) of the Bankruptcy Code.

32. Bozel has determined in its sound business judgment that the Postpetition Credit Agreement provides the best terms reasonably available to Bozel on which to obtain the postpetition financing required for the successful prosecution of this case. It has also determined after reasonable investigation that no lender, including JMC, will provide postpetition financing to Bozel unless Bozel's repayment obligations are granted superpriority status and are secured by liens on and security interests in the Collateral, as provided for in the Postpetition Credit. Moreover, no lender other than JMC will agree to provide financing on terms that are comparable to those offered by JMC. As such, the Court should accord Bozel's payment obligations under the Postpetition Credit Agreement priority over other administrative expenses as provided by section 364(c)(1) of the Bankruptcy Code, and should authorize Bozel to provide the liens and security interests contemplated by the Postpetition Credit Agreement pursuant to section 364(c)(2) of the Bankruptcy Code.

33. Additionally, the Court should modify the automatic stay imposed by section 362(a) of the Bankruptcy Code to allow Bozel and/or JMC, as appropriate, to execute and file or record all documents, and take all other acts, reasonably required to provide the liens and security interests contemplated by the Postpetition Credit Agreement with the priority described herein.

34. Finally, the Court should grant the relief sought in the Motion on an interim basis so that Bozel can obtain the funds urgently needed for the payment of past due electric bills and additional charcoal inventory supplies, without which Bozel runs significant risk of diminishing

MIA181,511,423v7

its value as a result of irreparable harm to the physical assets and production capacity of its key operating subsidiary, Bozel Brazil. *See* Shapiro Decl., ¶¶ 9-14.

### C. JMC Should be Deemed a Good Faith JMC under Section 364(e)

35. Section 364(e) of the Bankruptcy Code protects a good faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal. Specifically, section 364(e) provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

36. The Postpetition Credit Agreement is the result of Bozel's reasonable and informed determination that JMC offered Bozel the most favorable terms available on which to obtain needed postpetition financing, and of extended arm's-length, good faith negotiations between Bozel and JMC. JMC is not an "affiliate" or "insider" of Bozel and, upon information and belief, has acted in good faith at all times. Bozel was advised throughout these negotiations by its professionals. The terms and conditions of the Postpetition Credit Agreement are fair and reasonable, and the proceeds from the Postpetition Credit Agreement will be used only for purposes that are permissible under the Bankruptcy Code. Accordingly, the Court should find that JMC is a "good faith" lender within the meaning of section 364(e) of the Bankruptcy Code, and is entitled to all of the protections afforded by that section.

17

### Notice

37. Bankruptcy Rule 4001 sets forth the notice requirements with respect to a motion to obtain credit pursuant to section 364 of the Bankruptcy Code. Specifically, if a committee of unsecured creditors has not been appointed under section 1102 of the Bankruptcy Code, Bankruptcy Rule 4001(c) requires that the Motion must be served on "creditors included on the list filed under Rule 1007(d), and on such other entities as the Court may direct. Fed. R. Bankr. P. 4001(c)(1) and (3). Bankruptcy Rule 4001 further provides that a hearing on the motion may be held "no earlier than 14 days after service of the motion." Fed. R. Bankr. P. 4001(c)(2). Bankruptcy Rule 4001(c) also requires that a motion for authority to obtain credit be accompanied by a copy of the credit agreement. Fed. R. Bankr. P. 4001(c)(1). Finally, Bankruptcy Rule 4001(d) provides that (i) a motion for approval to modify or terminate the automatic stay shall be served on any official creditors committee, on the creditors included on the list filed under Bankruptcy Rule 1007(d), and on other such entities as the court may direct, and (ii) objections may be filed within fourteen (14) days of the mailing of notice of the motion and the time for filing objections thereto. Fed. R. Bankr. P. 4001(d)(1)-(2).

38. Notice of this Motion, including a copy of the Postpetition Credit Agreement, has been served on Bozel's two secured creditors and largest unsecured creditors, and any parties who have filed a request for service pursuant to Bankruptcy Rule 2002, the Office of the United States Trustee for the Southern District of New York, and counsel for JMC. In light of the nature of the relief requested herein, Bozel submits that no other or further notice need be provided.

39. Bozel requests that the Court hold a hearing to determine whether to grant interim approval of the relief requested in this Motion on December 7, 2010, at 10:00 a.m., and a hearing to grant final approval of the relief requested in this Motion on December 15, 2010, at 10:00 a.m.

## No Prior Application

40. No previous application for the relief requested herein has been made to this or any other court.

## Conclusion

WHEREFORE Bozel respectfully requests entry of interim and final orders (i) authorizing Bozel to obtain postpetition financing pursuant to the terms of the Postpetition Credit Agreement; (ii) authorizing superpriority status for, and liens securing, Bozel's repayment obligations thereunder; (iii) establishing dates for interim and final hearings to consider the relief requested in the Motion; and (iv) granting such other and further relief as is just and proper.

Dated: New York, New York  
November 30, 2010

GREENBERG TRAURIG, LLP

/s/ Allen G. Kadish
Allen G. Kadish
Adam C. Dembrow
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
kadisha@gtlaw.com
dembrowa@gtlaw.com

and

Mark D. Bloom (admitted pro hac vice)
333 Avenue of the Americas, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
bloomm@gtlaw.com

Attorneys for the Debtor and Debtor in Possession