**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
**In re:** : Chapter 11
:
**BOZEL S.A.,** *et al.*, : Case No. 10-11802 (AJG)
:
**Debtors.** : Jointly Administered
:
---------------------------------------------------------------x

### ORDER APPROVING SALE OF SUBSTANTIALLY ALL ASSETS OF BOZEL S.A. TO JAPAN METALS & CHEMICALS CO., LTD.

Upon the *Debtor's Motion for Orders Approving (I) Bidding Procedures and Related Relief Regarding the Sale of Assets of Bozel S.A., and Notice Thereof, and (II) Sale of Assets* [Docket No. 100] (the "Motion")[1] of Bozel S.A. (the "Seller" and, together with Bozel, LLC, the "Debtors") seeking (I) an order (as further described below, the "Bid Procedures Order") (a) establishing bidding and auction procedures (the "Bid Procedures") related to the sale of certain of the Seller's assets – all of the Seller's equity interests in Bozel Mineracão S.A. ("Bozel Brazil") and Bozel Europe S.A.S. ("Bozel France") – (the "Purchased Assets") to Japan Metals & Chemicals Co., Ltd. (the "Purchaser"), pursuant to the purchase agreement by and between the Seller and the Purchaser, dated December 9, 2010, a copy of which is attached to the Motion as Exhibit A, or to a higher and better purchaser, free and clear of all liens, claims, encumbrances, and other interests pursuant to sections 105 and 363(b), (f), and (m), of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"); (b) designating the Purchaser as the "stalking horse" purchaser; and (c) scheduling an auction (the "Auction") and setting a date and time for a sale hearing (the "Sale Hearing") for the sale of the Purchased Assets; and (II) an order (the "Sale Order"), subject to the results of the Auction, approving and authorizing the sale

---
[1] Capitalized terms used but otherwise not defined herein shall have meanings ascribed to them in the Motion and the Purchase Agreement (as defined in the Motion).

of Purchased Assets (the "Sale") to the Purchaser; and it appearing that the Court [2] has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and it appearing that this matter is core pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (N) and (O); and it appearing that venue is proper in this district pursuant to 28 U.S.C. § 1408; and the Court having determined that the relief sought in the Motion is in the best interests of the Seller, its estate and all parties in interest; and the appearance of all interested parties and all responses and objections to the Motion having been duly noted on the record of the Sale Hearing before this Court on February 9, 2011 at 10:30 a.m.; and upon the *Order Approving Bid Procedures and Related Relief Regarding the Sale of Assets of Bozel S.A., and Notice Thereof* [Docket No. 120] (the "Bid Procedures Order"); and upon the record of the Sale Hearing and all of the proceedings in these cases had before the Court; and due and sufficient notice and service having been provided; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND, DETERMINED AND CONCLUDED:** [3]

**I.     General Findings and Notice**

A.     Pursuant to 28 U.S.C. §§ 157 and 1334, the Court has jurisdiction over this matter and over the property of the Seller's estate, including the Purchased Assets to be sold, transferred or conveyed pursuant to the Purchase Agreement. This matter is core pursuant to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. § 1408.

B.     On April 6, 2010 (the "Petition Date"), the Seller filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Bozel, LLC ("Bozel LLC") filed its voluntary

---
[2] The "Court" shall mean the United States Bankruptcy Court for the Southern District of New York.
[3] All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate pursuant to Bankruptcy Rule 7052, as made applicable by Bankruptcy Rule 9014.

petition for relief under chapter 11 of the Bankruptcy Code on January 5, 2011 (the "Bozel LLC Petition Date").  This Court entered an order approving the joint administration of the Seller's and Bozel LLC's chapter 11 cases on January 7, 2011 [Docket No. 134].  Since the Petition Date and the Bozel LLC Petition Date respectively, the Seller and Bozel LLC have continued in possession and management of their respective businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

C. As evidenced by the affidavits of service filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, the Auction and the Sale Hearing and a reasonable opportunity to object thereto have been provided in accordance with sections 102(1) and 363(b) of the Bankruptcy Code, Rules 2002, 6004, 9006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), the local rules of this Court, and in compliance with the Bid Procedures Order.

D. A reasonable opportunity to object or be heard regarding the requested relief in the Motion and the Order has been afforded to all interested persons and entities, including, without limitation, (i) the United States Trustee for Region 2, (ii) all known secured creditors and all known unsecured creditors of the Seller, (iii) all entities known to have expressed a *bona fide* interest in acquiring the Purchased Assets, (iv) all other known parties-in-interest in these bankruptcy cases (including any party who has entered an appearance and request for service of papers pursuant to Bankruptcy Rule 2002), and (v) all parties entitled to notice pursuant to Bankruptcy Rule 6004(a) (collectively, the "Notice Parties").

E. Other parties interested in bidding on the Purchased Assets were provided, upon request and execution of confidentiality agreements, sufficient information to make an informed judgment on whether to bid on the Purchased Assets.

## II. Corporate Power, Authority and Ownership of the Assets

F. The Seller has full corporate power and authority to execute the Purchase Agreement and all other documents contemplated thereby, and the Sale of the Purchased Assets has been duly and validly authorized by all necessary corporate authority by the Seller to consummate the transactions contemplated by the Purchase Agreement. No consents or approvals, other than as may be expressly provided for in the Purchase Agreement, are required by the Seller to consummate such transactions. Crastvell Trading Ltd. ("Crastvell") and Trafalgar Capital Specialized Investment Fund ("Trafalgar"), the Seller's two secured creditors, have consented to and support the Sale, subject to the provisions of this Order.

## III. The Sale Process

G. As demonstrated on the record at the hearing on the Bid Procedures Order and the Sale Hearing, the Seller engaged in substantial marketing efforts with respect to the Purchased Assets. The Seller and its professionals have complied, in good faith, in all respects with the Bid Procedures Order. As demonstrated by (i) the offers of proof received by the Court without objection, and (ii) the representations of counsel made on the record at the Sale Hearing, thorough marketing efforts and a competitive sale process were conducted in accordance with the Bid Procedures Order, and the Seller (a) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer for all of the Purchased Assets, (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets, and (iii) considered any bids submitted on or before the Bid Deadline.

H. The Bid Procedures set forth in the Bid Procedures Order were non-collusive, proposed in good faith, and are substantively and procedurally fair to all parties in interest.

I.  On February 8, 2011, the Seller conducted the Auction, at which the Purchaser and Globe Specialty Metals, Inc. ("Globe") each participated as Qualified Bidders. Following the Auction, and in consultation with its attorneys and advisors, the Seller determined, in its business judgment, that the Purchaser's bid constituted the highest and best offer. Therefore, the Seller seeks to designate the Purchaser as the Winning Bidder, and, in the exercise of its business judgment chose not to designate a backup bidder.

J.  The conduct of the Auction and the procedures employed by the Seller at the Auction were fair, reasonable and within the discretion granted to the Seller in accordance with the Bid Procedures Order.

### IV. The Purchase Agreement

K.  The offer of the Purchaser, set forth in the Purchase Agreement, provides for the Sale and transfer of the Purchased Assets to the Purchaser. The offer of the Purchaser, upon the terms and conditions set forth in the Purchase Agreement and herein, including the form and total consideration to be realized by the Seller pursuant to the Purchase Agreement, (i) is the highest and best offer received by the Seller; (ii) is fair and reasonable; (iii) is in the best interests of the Debtor's creditors and estate; (iv) constitutes full and adequate consideration and reasonably equivalent value for the Purchased Assets; and (v) will provide a greater recovery for the Seller's creditors and other interested parties than would be provided by any other practically available alternative.

L.  The Seller has demonstrated a sufficient basis and compelling circumstances to enter into the Purchase Agreement and sell the Purchased Assets under section 363 of the Bankruptcy Code, and such actions are appropriate exercises of the Seller's business judgment and in the best interests of the Debtor, its estate and its creditors. Such business reasons include,

but are not limited to, the facts that (i) the Seller is not reorganizing its business; (ii) there is a substantial risk of deterioration of the value of the Purchased Assets if the Sale is not consummated in a timely manner; (iii) the Purchase Agreement constitutes the highest and best offer for the Purchased Assets; (iv) the Purchase Agreement and the Closing will present the best opportunity to realize the value on a going-concern basis and avoid decline and devaluation of the Purchased Assets; and (v) unless the Sale is concluded expeditiously as provided for in the Sale Motion and pursuant to the Purchase Agreement, the estates' recoveries may be diminished.

M.      The Purchaser is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to all of the protections and immunities of sections 363(m) and 363(n) of the Bankruptcy Code.  The Purchase Agreement was negotiated and entered into in good faith and without collusion or fraud of any kind.  Neither the Seller nor the Purchaser has engaged in any conduct that would prevent the application of sections 363(m) or 363(n) of the Bankruptcy Code to the Purchase Agreement or to the consummation of the Sale transaction and transfer of the Purchased Assets to the Purchaser.  Pursuant to the Bid Procedures Order, the Purchaser has demonstrated that it has the financial capacity to effectuate the transactions contemplated by the Purchase Agreement.

N.      The terms and conditions of the Purchase Agreement, including the consideration to be realized by the Seller pursuant to the Purchase Agreement, are fair and reasonable, and the transactions contemplated by the Purchase Agreement are in the best interests of the Seller's estate.

O.      The Purchased Assets constitute property of the Seller's estate, and title thereto is vested in the Seller's estate within the meaning of section 541(a) of the Bankruptcy Code.  As set forth in the Purchase Agreement, in the Recitals thereof, the Seller is selling and transferring to

the Purchaser as Purchased Assets (A) all of the issued and outstanding equity interests in Bozel Brazil (the "Bozel Brazil Interests") and (B) all of the issued and outstanding equity interests in Bozel France (the "Bozel France Interests", and together with the Bozel Brazil Interests, the "Interests") for the Purchase Price and upon the terms and conditions set forth in the Purchase Agreement. The Seller has determined that the Sale contemplated by the Purchase Agreement is an essential element of its ability to propose, confirm and consummate a chapter 11 plan.

P. Except as otherwise provided in the Purchase Agreement or this Order, the Purchased Assets shall be sold free and clear of all mortgages, restrictions, hypothecations, charges, indentures, options, security interests, conditional sale or other title retention agreements, pledges, liens (including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), judgments, rights of first refusal, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, whether arising prior to or subsequent to the Petition Date, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (collectively, "Liens, Claims, Encumbrances and Interests"), and the Purchaser would not enter into the Purchase Agreement to purchase the Purchased Assets otherwise.

Q. The transfer of the Purchased Assets to the Purchaser is a legal, valid and effective transfer of the Purchased Assets, and, except as may otherwise be provided in the Purchase Agreement or this Order, shall vest the Purchaser with all right, title and interest of the Seller to the Purchased Assets free and clear of any and all Liens, Claims, Encumbrances and Interests. Except as specifically provided in the Purchase Agreement or this Order, the Purchaser

shall not assume or become liable for any Liens, Claims, Encumbrances and Interests relating to the Purchased Assets being sold by the Seller.

R. The transfer of the Purchased Assets to the Purchaser free and clear of all Liens, Claims, Encumbrances and Interests will not result in any undue burden or prejudice to any holders of any Liens, Claims, Encumbrances and Interests. Except as provided for in the Purchase Agreement or this Order, all persons having Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever against or in the Seller or the Purchased Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Liens, Claims, Encumbrances and Interests against the Purchaser, any of their assets, property, successors or assigns, or the Purchased Assets.

S. The Seller may sell the Purchased Assets free and clear of all Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever as set forth in the Purchase Agreement (and except as otherwise provided in this Order) because, in each case, either the Liens, Claims, Encumbrances and Interests will be fully satisfied upon Closing of the Sale; or one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied. The Seller's two secured lenders, Crastvell and Trafalgar have consented to the Sale free and clear of all Liens, Claims, Encumbrances and Interests as set forth above.

T. The Purchaser is acting in good faith, pursuant to section 363(m) of the Bankruptcy Code, in closing the transactions contemplated by the Purchase Agreement at any time on or after the entry of this Order in accordance with the Purchase Agreement, and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rule 6004(h).

U. The transactions contemplated under the Agreement do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Seller and/or the Seller's estates, there is not substantial continuity between the Purchaser and the Seller, there is no common identity between the Seller and the Purchaser, there is no continuity of enterprise between the Seller and the Purchaser, the Purchaser is not a mere continuation of the Seller or its estate, and the Purchaser does not constitute a successor to the Seller or its estate.

V. The total consideration provided by the Purchaser for the Purchased Assets is the highest and best offer received by the Seller, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Transfer Act and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Purchased Assets.

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1. The relief requested in the Sale Motion is granted in its entirety, subject to the terms and conditions contained herein.

2. The *Motion by Stalking Horse Bidder for a Declaration That Competing Bid is Not a Qualified Bid Under the Terms of the Bidding Procedures Order* [Docket No. 162] filed by the Purchaser on February 2, 2011, has been withdrawn in its entirety.

3. No objections have been raised to the conduct of the Auction. To the extent any objection, response or request for continuance was not otherwise withdrawn, waived or settled, or otherwise treated herein, it, along with all reservations of rights contained therein, is overruled and denied.

4. Notice of the Sale Hearing was fair and proper under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

*Approval of Sale*

5. The Sale of the Purchased Assets, the terms and conditions of the Purchase Agreement and the transactions or agreements contemplated thereby, shall be, and hereby are, authorized and approved in all respects.

6. The Seller has the authority to effectuate the Sale of the Purchased Assets with the Purchaser on the terms set forth in the Purchase Agreement.

7. Crastvell shall be allowed a secured claim against the Seller's estate, secured by valid, perfected and enforceable liens on the Seller's stock in, and certain assets of, Bozel France and Bozel Brazil, in the amount of $16,834,927.70 as of February 18, 2011, which amount shall be paid in full in cash at Closing of the Sale, subject to adjustment for (i) per diem interest in the amount of $5215.18 per day should the Closing and payment occur on a date other than February 18, plus (ii) reasonable attorneys fees and expenses of the law firm of Klestadt & Winters in an amount (a) to be agreed upon by the Seller prior to the Closing Date upon review of invoices (not including detailed time entries) from said law firm or (b) upon further order of the Court.

8. Trafalgar shall be allowed a secured claim against the Seller's estate, secured by valid, perfected and enforceable liens on the Seller's stock in, and certain assets of, Bozel France and Bozel Brazil, in the amount of $1,744,233 as of February 28, 2011, which amount shall be paid in full in cash at Closing of the Sale, subject to adjustment for (i) per diem interest in the amount of $652.56 per day should the Closing and payment occur on a date other than February 28, plus (ii) reasonable attorneys fees and expenses of the law firm of Akerman Senterfitt in an

amount (a) to be agreed upon by the Debtor prior to the Closing Date upon review of invoices (not including detailed time entries) from said law firm or (b) upon further order of the Court.

9. As a condition to payment of the amounts to Crastvell and Trafalgar as set forth above, each of Crastvell and Trafalgar shall cooperate with the Seller, Bozel France and Bozel Brazil in respect of and following the Closing, including but not limited to execution and delivery of such releases, satisfactions and other documents in such form as the Seller, Bozel France, and Bozel Brazil and their respective counsel may reasonably require in accordance with applicable law in, among other jurisdictions, the United States, Brazil and France.

10. The Seller shall return the deposit of Globe no later than two business days after the Closing of the Sale. The Deposit made by the Purchaser under the Purchase Agreement shall be dealt with as provided in the Purchase Agreement.

11. The remaining balance due and owing to the Purchaser under the Postpetition Credit Agreement (as defined in the *Final Order Authorizing Debtor to Enter Into a Postpetition Credit Agreement and Granting Superpriority Status* [Docket No. 108]), plus accrued interest through date of Closing and reasonable attorneys fees pursuant to such Postpetition Credit Agreement shall be netted against the Purchase Price at Closing.

12. The Purchaser is hereby granted all of the protections provided to a good faith buyer under sections 363(m) and (n) of the Bankruptcy Code.

13. Pursuant to sections 363(m) and (n) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any transfer under the Purchase Agreement or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any

reversal, modification or vacatur shall be governed in all respects by the original provisions of this Order and the Purchase Agreement, as the case may be.

14. The Seller is hereby authorized to fully perform under, consummate and implement the terms of the Purchase Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Purchase Agreement, this Order and sale of the Purchased Assets contemplated thereby including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take all further actions as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession any or all of the Purchased Assets, as may be necessary or appropriate to the performance of the Seller's obligations as contemplated by the Purchase Agreement, without any further corporate action or orders of this Court.

15. The Seller, the Purchaser, and each other person or entity having duties or responsibilities under the Purchase Agreement, any agreements related thereto or this Order, and their respective directors, officers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the Purchase Agreement, to carry out all of the provisions of the Purchase Agreement and any related agreements; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Purchase Agreement, and any related agreements; to take any and all actions contemplated by the Purchase Agreement, any related agreements or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are

consistent with, and necessary or appropriate to implement, effectuate, and consummate, the Purchase Agreement, any related agreements and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court or further action by their respective directors, officers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, employees, members, agents, representatives, and attorneys of such entities.

16. The Seller is further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Purchase Agreement, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Seller may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporation laws of the State of New York, and all other applicable business corporation, trust, and other laws of the applicable governmental units with respect to the implementation and consummation of the Purchase Agreement, any related agreements and this Order, and the transactions contemplated thereby and hereby.

17. Effective as of the Closing Date, the Sale of the Purchased Assets by the Seller to the Purchaser shall constitute a legal, valid and effective transfer of the Purchased Assets

notwithstanding any requirement for approval or consent by any person and vests the Purchaser with all right, title and interest of the Seller in and to the Purchased Assets, free and clear of all Liens, Claims, Encumbrances and Interests of any kind, except as otherwise provided in the Purchase Agreement or this Order, pursuant to section 363(f) of the Bankruptcy Code.

### *Transfer of Assets*

18. Except to the extent specifically provided in the Purchase Agreement, upon the Closing, the Seller shall be, and hereby is, authorized and empowered, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell the Purchased Assets to the Purchaser. Except as provided for in the Purchase Agreement or this Order, the Sale of the Purchased Assets vests the Purchaser with all right, title and interest of the Seller to the Purchased Assets free and clear of any and all Liens, Claims, Encumbrances and Interests and other liabilities and claims, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise, with all such Liens, Claims, Encumbrances and Interests to attach only to the proceeds of the sale with the same priority, validity, force, and effect, if any, as they now have in or against the Purchased Assets, subject to all claims and defenses the Seller may possess with respect thereto. The Motion shall be deemed to have provided sufficient notice of the Sale of Purchased Assets free and clear of Liens, Claims, Encumbrances and Interests. Except as provided for in the Purchase Agreement or this Order, following the Closing Date, no holder of any Liens, Claims, Encumbrances and Interests in the Purchased Assets may interfere with the Purchaser's use and enjoyment of the Purchased Assets based on or related to such Liens, Claims, Encumbrances and Interests, or any actions that the Seller may take in its chapter 11 case and no

person may take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Purchase Agreement or this Order.

19. On or before the Closing Date, the Seller's creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release any Liens, Claims, Encumbrances and Interests of any kind against the Purchased Assets, as such Liens, Claims, Encumbrances and Interests may have been recorded or may otherwise exist, except as otherwise provided in the Purchase Agreement or this Order. If any person or entity that has filed financing statements or other documents or agreements evidencing any Liens, Claims, Encumbrances and Interests in or against the Purchased Assets shall not have delivered to the Seller prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens, Claims, Encumbrances and Interests that the person or entity has with respect to the Purchased Assets, the Seller is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Purchased Assets prior to the Closing, and the Purchaser is authorized to file such documents after Closing.

20. All of the Seller's interests in the Purchased Assets to be acquired by the Purchaser under the Purchase Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Purchaser. Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Purchased Assets acquired by the Purchaser under the Purchase Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to the Purchaser.

21.     The intercompany claims held by Bozel Brazil and Bozel France against Bozel LLC, referenced in Section 3.04 of the Purchase Agreement, have been or shall be assigned, released, transferred and/or otherwise disposed of in advance of the Closing and, accordingly, shall not be property of Bozel Brazil or Bozel France as of the Closing.

22.     Except as otherwise expressly provided in the Purchase Agreement, all persons or entities, presently or on or after the Closing Date, in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request.

## *Additional Provisions*

23.     The Purchaser has not assumed or is otherwise not obligated for any of the Seller's liabilities other than as otherwise set forth in the Purchase Agreement.  Consequently, except as otherwise provided in the Purchase Agreement or this Order, all persons, Governmental Units (as defined in section 101(27) of the Bankruptcy Code) and all holders of Liens, Claims, Encumbrances and Interests based upon or arising out of liabilities retained by the Seller are hereby enjoined from taking any action against the Purchaser or the Purchased Assets, including asserting any setoff, right of subrogation or recoupment of any kind, to recover any Liens, Claims, Encumbrances and Interests or on account of any liabilities of the Seller other than as provided in the Purchase Agreement.

24.     Except to the extent expressly provided in this Order, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, but not limited to, the Seller, all debt security holders, equity security holders, the Seller's employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a Lien, Claim, Encumbrance and Interest of any kind or nature whatsoever against, in or with respect to the Seller or the Purchased

Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Purchased Assets, the operation of the Seller's business prior to the Closing Date or the transfer of the Purchased Assets to the Purchaser, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Lien, Claim, Encumbrance and Interest, whether by payment, setoff, or otherwise, directly or indirectly, against the Purchaser or any Affiliates, successors or assigns thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, Affiliates, financial advisors and representatives (each of the foregoing in its individual capacity), or the Purchased Assets. For the avoidance of doubt, the foregoing shall not prevent the Seller, its estate, successors or permitted assigns from pursuing claims, if any, against the Purchaser and/or its successors and assigns in accordance with the terms hereof and/or of the Purchase Agreement.

25. Other than as provided in the Purchase Agreement, the Purchaser shall have no obligations with respect to any liabilities of the Seller, and the Seller is deemed to release and forever discharge the Purchaser and any of its Affiliates, successors and assigns from any and all claims, causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating to the sale, except for liabilities and obligations under the Purchase Agreement.

26. Nothing in this Order or the Purchase Agreement releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order. Nothing in this Order or the Purchase Agreement authorizes the transfer

or assignment to Purchaser of any license, permit, registration, authorization, or approval of or with respect to a governmental unit without Purchaser's complying with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

27. Subject to the terms of the Purchase Agreement, the Purchase Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Seller and the Purchaser, without further action or order of the Court; <u>provided</u>, <u>however</u>, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Purchase Agreement and any related agreements.

28. The failure specifically to include any particular provisions of the Purchase Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Seller and the Purchaser that the Purchase Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing.

29. To the extent any provisions of this Order conflict with the terms and conditions of the Purchase Agreement, this Order shall govern and control.

30. This Order and Purchase Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Seller and the Purchaser, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a chapter 7 case if this case is converted from chapter 11, all creditors of the Seller (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to

accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets.

31. The provisions of this Order are non-severable and mutually dependent.

32. The Purchaser shall cooperate with the Seller and its estate from and after the Closing with respect to the exchange of books, records and documents that may be necessary for estate administration.

33. This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bid Procedures Order, and the Purchase Agreement in all respects and to decide any disputes concerning this Order and the Purchase Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Purchase Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Purchased Assets and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Purchased Assets free and clear of all Liens, Claims, Encumbrances and Interests.

34. The stay of orders authorizing the use, sale or lease of property as provided in Bankruptcy Rule 6004(h) shall not apply to this Order, and this Order is immediately effective and enforceable.

Dated: New York, New York
      February 10, 2011      **s/Arthur J. Gonzalez**
                                         HONORABLE ARTHUR J. GONZALEZ
                                         CHIEF UNITED STATES BANKRUPTCY JUDGE